IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT COOPER, #209556                    :

Plaintiff,                                :

v.                                        :       CIVIL ACTION NO. JFM-11-1617

CORIZON, INC.
f/k/a CORRECTIONAL MEDICAL SERVICES,:
INC,
ASRESAHEGN GETACHEW, M.D.,
COLIN OTTEY, M.D.,
JANICE GILMORE, R.N.
                                          :
Defendants.

## MEMORANDUM

Pending is Robert Cooper's prisoner civil rights complaint under 42 U.S.C. § 1983. ECF

No. 1.  Defendant Warden Bobby Shearin, by his counsel, and Defendants Corizon, Inc., f/k/a

Correctional Medical Services, Inc.  (hereinafter "Corizon"), Asresahegn Getachew, M.D., Colin

Ottey, M.D., and Janice Gilmore, R.N. (collectively, the "Medical Defendants"), by their counsel

have filed motions pursuant to Fed. R. Civ. P. 12(b) to dismiss, or in the alternative, pursuant to

Fed. R. Civ. P. 56 for summary judgment.  (ECF Nos. 11 and 13).[1]  The case is ripe for disposition

and the court now rules pursuant to Local Rule 105.6 (D. Md. 2011), no hearing being necessary.

For reasons to follow, the court will grant Warden Bobby Shearin's motion to dismiss (ECF No. 11)

and the Medical Defendants' motion for summary judgment (ECF No. 13).

## PLAINTIFF'S CLAIMS

Cooper, an inmate at the North Branch Correctional Institution ("NBCI"), claims he has

been denied appropriate treatment for peripheral arterial disease (PAD). [2]  Cooper states that on

---

[1]  Plaintiff was notified of his opportunity to respond to defendants' dispositive motions.  ECF Nos. 12 and 14.  He has not filed a reply.

[2]  Peripheral arterial disease is a condition of the blood vessels that leads to narrowing and hardening of the arteries that supply the legs and feet.  This narrowing of the blood vessels leads to decreased blood flow, which can cause pain with

March 5, 2007, he was sent to the emergency room at the University of Maryland Medical Center for a possible blood clot in his left leg.  He complains that Corizon and the Division of Correction failed to arrange to transport him to a follow-up appointment on March 2007.  ECF No. 1.  In July of 2007, Cooper was transported to the University of Maryland Hospital Center for an appointment in the vascular clinic.  Cooper asserts that between July 2007 and August 8, 2010, his vascular condition worsened. ECF No. 1, p. 3.

On February 4, 2011, Asresahegn Getachew, M.D. ordered a "dye test" for Cooper's left leg.  Cooper claims that on February 15, 2011, Corizon "refused" to send him to a local hospital for the dye test and instructed the medical staff at North Branch Correctional Institution to prescribe medication to improve the circulation in his leg instead.  *Id*, p.  4.  Cooper claims that between February 15, 2011 and April 20, 2011, he did not receive the medication or dye test.  *See id.*  After Cooper submitted Sick Call Request Forms on or about April 16 and April 20, 2011, Colin Ottey, M.D.  said he would order the medication.  No medication arrived.  Cooper was seen by Dr. Ottey on April 26, and April 30, 2011, at which time orders were resubmitted for the medication.  ECF No. 1, p.  5.  On June 13, 2011, Cooper filed the instant complaint for injunctive relief in which he asks this court to order the medical provider to "send the plaintiff to the hospital" for a "dye test and follow-ups."

## FACTS

Coooper's verified medical records, as submitted by the Medical Defendants, show that he has a history of hypertension, gastroesophageal reflux (GERD), hyperlipidemia,[3] and PAD.  Dr.

---

walking.  PAD is caused by arteriosclerosis when fatty materials collect on the arterial wall, thereby causing "hardening of the arteries."  Exhibit A, n. 2.

[3] Hyperlipidemia is an excess of lipids(fats), such as cholesterol and triglycerides in the blood stream.  Exhibit A, n. 1.

Ottey attests that Cooper has been prescribed and receiving: 1) Prinivil for his hypertension and to relax his blood vessels to improve circulation; 2) Lopressor for hypertension; 3) Zocor to lower cholesterol and increase blood flow and decrease the need for surgery; 4)  Norvasc for his hypertension and to relax his blood vessels, 5) aspirin to prevent blood clots; and 5) Zantac for his GERD.  Affidavit of Colin Ottey, M.D., Exhibit A, *see also* Exhibit B, 2-3, 37-41.

On January 31, 2011, Cooper submitted a Sick Call Request Form complaining that his left foot and leg become numb in cold weather.  On February 4, 2011, Dr. Getachew examined Cooper in the Chronic Care Clinic (CCC).  Cooper complained of cramps in his calf muscle when walking farther than one block.  Dr. Getachew noted Cooper's blood pressure and LDL cholesterol level were well-controlled with medication and submitted a request to have him evaluated by a vascular surgeon.  The consultation request was presented to Wexford Health Services [4] for approval on February 15, 2011.  Wexford denied the consultation, recommending instead a trial of medication to increase blood flow. Exhibit A, ¶ 4, Exhibit B, pp. 1-7.

On February 15, 2011, Lisa Schindler, a physician's assistant, summarizes the results of the consultation request.

> Wexford did not approve this consult as pt [patient] has known PAD and this test would be abn [abnormal].  It would confirm what is already known.  A trial of meds to improve pt blood flow was recommended.  If this is not successful pt can be represented for further investigation or to be worked up for surgical intervention.

> ****************

Wexford recommended that we give pt a 2-3 month trial of Trental or Pietal to

---

[4]   Wexford Health Sources is the utilization review contractor for the State of Maryland.  Exhibit A, n. 3.  Wexford reviews and approves all requests for on-site and off-site consultants for certain medical devices and other tests.  Corizon (formerly known as Correctional Medical Services) is not affiliated with Wexford, nor does it have any control over Wexford's approval process.

medically improve blood flow.  If this is not successful then pt can be sent for
further testing or to the vascular surgeon for eval.

Exhibit B, pp. 6-7.

On April 14, 2011, Cooper complained in a Sick Call Request Form that he had not received

the dye test for poor circulation.  On April 17, 2011, Cooper told Monica Methany, R.N. that he

was to be sent offsite for evaluation by a specialist for his PAD.  On April 20, 2011, Dr. Ottey

evaluated Cooper.  Dr. Ottey indicated that he would request the consultation report and reschedule

Cooper to discuss the results. At the time, Dr. Ottey was unaware that Wexford had denied the

consultation.[5] Exhibit A, p. 3-4, ¶ 5, Exhibit B. pp. 8-11.

On April 23, 2011, Cooper filed a Sick Call Request Form for pain in his left leg and side

and because he had not received the "poor circulation drugs."  On April 26, 2012, Dr. Ottey

examined Cooper, who did not complain of pain and whose physical examination was within

normal limits. On April 29, 2011, Cooper filed a Sick Call Request Form indicating he had yet to

receive his medication.   On April 30, 2011, Dr. Ottey examined Cooper, who complained of pain in

his calf and thigh, more on the left than the right.  Dr. Ottey prescribed Trental to improve

circulation.  Exhibit B.  12-21, 42-43.

On July 1, 2011, Cooper complained his left leg was weak, but reported the Trental was

helping to decrease pain and swelling.  He stated he had no numbness or tingling.   On July 2, 2011,

Cooper rated his pain as seven out of ten, with ten as the worst pain.  Dr. Ottey referred him to

physical therapy for evaluation and the possible use of a cane for ambulation.  Exhibit B, pp. 22-24,

44.

On August 13, 2011, Cooper was seen by Dr. Ottey.  Cooper complained of left leg swelling

---

5   It is unclear why the consultation report, apparently rendered two months earlier, had not been made available to Dr.
Ottey.

and pain, and Cooper indicated the Trental was not providing adequate relief.   On August 23, 2011,

Dr. Ottey submitted another request for a vascular consultation.  On August 26, 2011, the

consultation request was presented to Wexford.  Exhibit B. p. 32.  Wexford recommended

conducting an ankle-brachial index[6] which was performed on September 6, 2011.  The test showed

that Cooper suffers from moderate PAD in his left leg.  Wexford thereafter approved the vascular

consultation.  Exhibit B, pp. 34-36.

## STANDARD OF REVIEW

### A.  Motion to Dismiss

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain

statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal

Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon

which relief can be granted; therefore, "the purpose of Rule 12(b)(6) is to test the sufficiency of a

complaint and not to resolve contests surrounding the facts, the merits of a claim, or the

applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006); *see

also McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010) (citation omitted). When ruling on

such a motion, the court must "accept the well-pled allegations of the complaint as true," and

"construe the facts and reasonable inferences derived therefrom in the light most favorable to the

plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief

that is plausible on its face." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007).

under the plausibility standard, a complaint must contain "more than labels and conclusions" or a

"formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. "Even though

---

6   An ankle-brachial index compares blood pressure in the arms to blood pressure in the legs, as measured by the pulse

the requirements for pleading a proper complaint are substantially aimed at assuring that the

defendant be given adequate notice of the nature of a claim being made against him, they also

provide criteria for defining issues for trial and for early disposition of inappropriate complaints."

*Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009). The Supreme Court has explained that

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

do not suffice" to plead a claim. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

### B.  Motion for Summary Judgment

Rule 56(a) & (c) of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

> This does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

The party seeking summary judgment bears an initial burden of demonstrating the absence of a

genuine issue of material fact.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323  (1986).  Once the

---

in the ankles.  Exhibit A, n. 4.

moving party has met that burden, the non-moving party must come forward and demonstrate that such

an issue does, in fact, exist. *See Matsushita Elec. Co., Ltd. v. Zenith Radio Corp.,*  475 U.S. 574, 586-

87 (1986).  "The party opposing a properly supported motion for summary judgment 'may not rest upon

the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that

there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525

(4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)); *see also Rivanna Trawlers Unlimited v. Thompson*

*Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988).   The court generally must view all facts and draw all

reasonable inferences in the light most favorable to the nonmoving party.  *See  Scott v. Harris,* 550 U.S.

372, 376-77 (2007). However, "facts must be viewed in the light most favorable to the nonmoving party

only if there is a 'genuine' dispute as to those facts." *Id.* at 380.  This court is mindful that plaintiff is

acting pro se, and his pleadings have been accorded liberal construction.  *See Erickson v. Pardus,* 551

U.S. 89 (2007) (per curiam).

## DISCUSSSION

### A.    Warden Bobby Shearin

The complaint makes no other mention of Warden Shearin other than to name him as a

defendant.  Because no facts are alleged against defendant Shearin, he is entitled to dismissal of the

complaint.  It also bears noting too that Warden Shearin attests that he plays no role and makes no

decisions regarding medical care provided to inmates. Exhibit A, Declaration of Warden Bobby P.

Shearin, ¶¶ 1-2.   Warden Shearin is not authorized to instruct medical personnel to administer any

medical procedures or treatment.  *See id*, ¶ 3.  Prison officials are entitled to rely on medical

judgments and expertise of prison physicians and medical personnel concerning the course of

treatment deemed necessary for prisoners.  *See Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir.1995);

*see also Miltier v. Beorn*, 896 F.2d 848, 854–55 (4th Cir. 1990) (stating that supervisory prison

officials are entitled to rely on professional judgment of trained medical personnel and may be found to have been deliberately indifferent by intentionally interfering with a prisoner's medical treatment ordered by such personnel). Consequently, Warden Shearin's motion to dismiss will be granted.

### B.    Medical Defendants

#### 1.    Respondeat Superior

Corizon is a provider of contractual medical services to inmates at certain Maryland correctional institutions. To the extent the complaint names Corizon based solely upon vicarious liability, a private corporation is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of respondeat superior.  *See Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co*., 678 F.2d 504, 506 (4th Cir. 1982); *Clark v. Maryland Department of Public Safety and Correctional Services*, 316 Fed. Appx. 279, 282 (4th Cir. 2009).  Accordingly, there is no legal basis to hold Corizon liable in this case.

#### 2.    Eighth Amendment

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).  When prison officials  show "deliberate indifference" to a prisoner's "serious medical needs," their actions or omissions give rise to an Eighth Amendment violation. *Id*. at 104.  The prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).   The medical treatment provided must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.  *See Miltier,* 896 F.2d at 851.  A defendant must know of and

disregard an excessive risk to inmate health or safety.  Further, a health care provider must have

actual knowledge of a serious condition, not just knowledge of the symptoms.  *See Johnson v.*

*Quinones*, 145 F.3d 164, 168 (4th Cir. 1998).   Mere negligence or malpractice does not rise to a

constitutional level.  *See Estelle*, 429 U.S at 105-06.   An inmate's disagreement with medical

providers about the proper course of treatment does not support an Eighth Amendment cause of

action.  *See Wright v. Collins,* 766 F.2d 841, 849 (4th Cir. 1985); *Wester v. Jones*, 554 F.2d 1285

(4th Cir. 1977); *Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975).   An inmate does not have a

constitutional right to specific medical treatment on demand simply because he thinks he needs a

certain procedure nor does he have a constitutional right to be treated by a specific doctor, nurse, or

other medical personnel. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("Society does not expect

that prisoners will have unqualified access to health care.").

        Cooper's request for injunctive relief is moot. "[A] case is moot when the issues presented

are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *United States v.*

*Hardy*, 545 F.3d 280, 283 (4th Cir. 2008) (quoting *Powell v. McCormack*, 395 U.S. 486, 496

(1969)). "The inability of the federal judiciary to review moot cases derives from the requirement of

Article III of the Constitution under which the exercise of judicial power depends upon the

existence of a case or controversy." *United States v. Hardy*, 545 F.3d 280, 283 (4th Cir. 2008)

(quoting *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974)).  In this case, it is undisputed that in May

of 2011, Cooper was prescribed and provided medication for his PAD.  He received diagnostic

testing reaffirming that he has moderate PAD, and was scheduled for further evaluation by a

vascular surgeon.  Cooper does not request any other relief.

        Further, there are no genuine disputes of material fact, and the Medical Defendants are

entitled to judgment in their favor as a matter of law.  The uncontroverted facts in evidence show

that Cooper was provided medication to improve his circulation.  Medical providers twice requested a vascular surgical consultation which was ultimately approved by the utilization review contractor.  Under these circumstances, Cooper does not demonstrate the Medical Defendants acted with requisite deliberate indifference to his serious medical needs.

**CONCLUSION**

For these reasons, the Court will grant Warden Shearin's motion to dismiss and the Medical Defendants' motion for summary judgment.   A separate order follows.


     June 12, 2012                                        /s/
Date                                                 J. Frederick Motz
                                                     United States District Judge